# In the United States Court of Federal Claims

No. 26-973C

(Filed:  July 16, 2026)

|  |  |
|---|---|
| **OS-DB-JV-2 LLC,** | ) |
| | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

## ORDER

On July 7, 2026, Plaintiff, OS-DB-JV-2 LLC ("OS-DB"), filed an action pursuant to 28 U.S.C. § 1491(b) in this Court, challenging the decision of Defendant, the United States — acting by and through the Department of Veterans Affairs ("VA") — to remove OS-DB from a service-disabled veteran-owned small business ("SDVOSB") set-aside procurement for janitorial services.  *See generally* ECF No. 1 ("Compl.").

The VA issued Solicitation No. 36C24825R0040 (the "Solicitation" or "RFP") for this FAR Part 15 procurement on May 7, 2025.  Compl. ¶ 12.  OS-DB acknowledges that "[t]he Solicitation . . . provide[d] that a joint venture may be eligible as an SDVOSB if it complies with 13 C.F.R. § 128.402 and the managing venturer makes the representations required by the clause." *Id.* ¶ 13.  The RFP further cautioned that "[p]roposals from offerors that fail[] to meet the minimum requirements — including a material failure to conform with the instructions set forth [in the Solicitation] — will be deemed unacceptable and will not be further considered."  ECF No. 17-1 at 89 (RFP § E.11).

OS-DB was one of 15 offerors to submit initial proposals in response to the RFP. Compl. ¶ 12.  "On November 13, 2025, after evaluating initial proposals, the VA established a competitive range of two offerors: OS-DB (*the only joint-venture offeror in the range*) and one other offeror."  *Id.* ¶ 16 (emphasis added).  OS-DB, however, did not

submit the required certification pursuant to 13 C.F.R. § 128.402(e) with its initial proposal, *see* ECF No. 5 at 4, a fact OS-DB's counsel later conceded during oral argument.

The VA subsequently issued a number of RFP amendments, including the final amendment, Amendment 004, on March 9, 2026.  Compl. ¶ 18.  Amendment 004 succinctly articulated its purposes:  "The purpose of . . . amendment [004] is to request proposal revisions due to the solicitation's updated period of performance, *as well as inform joint venture offerors of the requirements of 13 C.F.R. 128.402*."  ECF No. 17-1 at 163 (Amendment 004) (emphasis added).  To those ends, Amendment 004: (1) required the remaining two offerors to re-submit all proposal volumes, Compl. ¶ 18; and (2) included a "'Note for Joint Venture (JV) Offerors' [which] stated that, to comply with 13 C.F.R. § 128.402(e), JV offerors 'must include in their offer a certification' signed by an authorized official of each partner, attesting to compliance with 13 C.F.R. § 128.402(c) and (d)."  Compl. ¶ 18 (quoting Amedmend 004).

Offerors were required to submit final proposal revisions by March 13, 2026. Compl. ¶ 20.  OS-DB timely submitted its final proposal revision on the day revisions were due.  *Id.* ¶ 21.  While OS-DB's "submission transmittal email expressly named the 'JOINT VENTURE 13 C.F.R. 128.402 COMPLIANCE CERTIFICATION' as an attached document[,] [d]ue to an inadvertent electronic attachment error, the certification file was not, in fact, transmitted with the package."  *Id.*  OS-DB contends that "[t]he § 128.402(e) certification was fully executed and signed the day before" (*i.e.*, March 12, 2026), *id.* ¶ 20, "and was omitted only through an inadvertent electronic-attachment error,"  *id.* ¶ 2.

Thereafter, "[o]n March 26, 2026, the VA notified OS-DB that it had been removed from the competition, citing . . . the absence of the § 128.402(e) certification."  Compl. ¶ 23. OS-DB filed a timely protest with GAO, challenging the VA's decision to exclude OS-DB from the procurement.  *Id.* ¶ 26.  "GAO denied the protest on June 16, 2026, concluding that the VA reasonably treated the certification as a material term."  *Id.*

On July 7, 2026, OS-DB filed its complaint in this Court.  *See* Compl.  The crux of OS-DB's complaint is that the VA's exclusion of OS-DB from the procurement at issue was arbitrary and capricious[1] because, amongst other reasons, the VA improperly failed

---

[1] Pursuant to 28 U.S.C. § 1491(b)(4), this Court decides the merits of bid protest claims using the APA's standard of review, 5 U.S.C. § 706(2)(A), and accordingly considers a challenged agency procurement decision to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Nat'l Gov't Servs., Inc. v. United States*, 923 F.3d 977, 981 (Fed. Cir. 2019); *see also PGBA, LLC v. United States*, 389 F.3d 1219, 1226 (Fed. Cir. 2004) ("[W]hen

to seek clarification from OS-DB pursuant to FAR 15.306(a) regarding OS-DB's missing certification.[2]  Compl. ¶¶ 31-33 (Count II).  OS-DB explains that — as the incumbent provider of janitorial services for the VA — OS-DB had updated its joint venture status with the VA as recently as July 2025.  *Id.* ¶ 15.  Accordingly, OS-DB's "SDVOSB joint-venture status [was] neither new nor unverified."  *Id.* ¶ 14.  OS-DB thus asserted that its omission of the required certification from its final proposal revision amounted to no more than "a clerical attachment error during assembly of the electronic submission package," and thus could be corrected with a mere clarification.  *Id.* ¶ 21.

On July 8, 2026, OS-DB filed a motion for a preliminary injunction, requesting this Court to enjoin the VA from making an award for janitorial services pursuant to the Solicitation during the pendency of OS-DB's bid protest.  ECF No. 5.  Later that same day, this Court ordered OS-DB to file a status report, on or before July 9, 2026, providing this Court with its "best two cases in support of each of the following two propositions: (1) the certification that was not timely included with Plaintiff's proposal submission is nevertheless an immaterial defect; and (2) the government was obligated to engage in either clarifications or discussions with Plaintiff under these circumstances."  ECF No. 13.  This Court further ordered "the government [to] file a combined response to [OS-DB's] Motion for Preliminary Injunction, ECF No. 5, and [OS-DB's] status report[,]" on or before July 13, 2026.  ECF No. 13.

On July 9, 2026, OS-DB filed its required status report, ECF No. 15; and the government filed its combined response on July 13, 2026, ECF No. 17 ("Def. Resp.").  On July 14, 2026, this Court held oral argument on OS-DB's pending motion for a preliminary injunction, ECF No. 5.  *See* ECF No. 16.

At conclusion of oral argument, this Court issued an oral ruling, denying OS-DB's motion for a preliminary injunction, ECF No. 5.  This order more formally memorializes that decision.

\* \* \* \*

While this Court may issue a preliminary injunction pursuant to 28 U.S.C. § 1491(b)(2) and Rule 65 of the Rules of the United States Court of Federal Claims,

---

read together, [28 U.S.C. §] 1491(b)(4) and [5 U.S.C. §] 706(2)(A) compel the conclusion that section 1491(b)(4) only incorporates the arbitrary or capricious standard of review of section 706(2)(A).").

[2] The FAR is codified at Title 48, Ch. 1, of the Code of Federal Regulations.

"[a] preliminary injunction . . . is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Marathon Targets, Inc. v. United States*, 175 Fed. Cl. 725, 733 (2025) (quoting *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 879 (Fed. Cir. 2024)). To obtain preliminary relief, the movant has the burden to demonstrate that: (1) there is a reasonable likelihood of success on the merits of its claim(s) at trial; (2) it will suffer irreparable injury if the injunction is not granted; (3) absent an injunction the harm suffered by the movant will outweigh the government's harm if the injunction were to issue; and (4) granting the injunction is in the public interest. *Marathon Targets*, 175 Fed. Cl. 725 at 734 (collecting cases).

As an initial matter, this Court noted that although all of those factors are balanced against each other, the likelihood of success on the merits is the most important factor in considering whether to grant preliminary injunctive relief. *See G4S Secure Integration LLC v. United States*, 159 Fed. Cl. 249, 255 (2022) ("The first and most important factor to consider is whether the plaintiffs have shown a likelihood of success on the merits."); *cf. Shrink Missouri Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998) ("The most important of the [preliminary injunction] factors is the appellants' likelihood of success on the merits"). After explaining that the certification requirement contained in 13 C.F.R. § 128.402 constitutes a material solicitation requirement — and that the VA thus did not have an obligation to seek clarifications — this Court concluded that the likelihood that OS-DB would succeed on the merits was at or near zero.[3]

As the undersigned recently explained, the question of whether a solicitation requirement is material — and thus whether OS-DB's omission was material — is the key to evaluating whether the VA acted properly in rejecting OS-DB's proposal. *See Revelations Counseling & Consulting, LLC v. United States*, 180 Fed. Cl. 721, 733 (2026) ("The sole issue in this case is straightforward: did the VA properly reject [protester-plaintiff's]

---

[3] OS-DB's complaint also included an unequal treatment claim (Count IV). Compl. ¶ 39 ("The record reflects that the second joint-venture offeror was removed from the competition in November 2025 without any documented evaluation of compliance with § 128.402(e), while OS-DB—the sole remaining JV offeror—was later excluded under the strict application of that very requirement."). This Court's July 8, 2026, order, discussed *supra*, required OS-DB to "identify [in its status report] whether another offeror was permitted to cure a defect in its already-submitted proposal either before or after the deadline for proposals," ECF No. 13. In its statue report, OS-DB admitted that "OS-DB is not aware of any instance in which another offeror was permitted to cure a defect in its already-submitted proposal either before or after the deadline for proposals in this procurement." ECF No. 15 at 1. At oral argument, when pressed to further explain the allegation, counsel for OS-DB withdrew the unequal treatment claim.

proposal . . . or did the VA act arbitrarily and capriciously in rejecting [protester-plaintiff's] proposal because any error or omission in [protester-plaintiff's] putative certification was immaterial?" (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996)). In that regard, FAR 15.306(a) — governing when "clarifications . . . between the Government and offerors . . . may occur when award without discussions is contemplated[,]" — addresses clarifications with respect to non-material, "minor or clerical errors." FAR § 15.306(a)(2) ("If award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals . . . or to resolve minor or clerical errors."); *see also BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 511 (2013) (explaining that be within the ambit of FAR 15.306(a)(2), an offeror's omission must be a "clerical error," not a "material" omission).

Accordingly, for OS-DB to ultimately prevail on the merits, OS-DB would need to persuade this Court that OS-DB's certification omission was an immaterial defect in its proposal, notwithstanding RFP Amendment 004 and 13 C.F.R. § 128.402(e). OS-DB has not done so here — and, frankly, this Court does not see how it can do so. This Court articulated three reasons for its conclusion.

*First*, this Court explained that the certification requirement at issue fits squarely into this Court's definition of a material solicitation term. In *Revelations Counseling & Consulting*, the undersigned explained that a solicitation requirement is material where the solicitation: (1) expressly conveys the requirement; and (2) "hinges the acceptance or rejection of a proposal on whether it adheres to [the] particular requirement[.]" 180 Fed. Cl. at 734; *see also DigiFlight, Inc. v. United States*, 150 Fed. Cl. 650, 657 (2020) (emphasizing that "[a requirement] that is important to the government's evaluation of [an] offer" bears on the question of if the requirement is a material one (citing cases)).

Here, the Solicitation could not have been clearer on this point: the RFP cautioned that "[p]roposals from offerors that fail[] to meet the minimum requirements — including a material failure to conform with the instructions set forth [in the Solicitation] — *will* be deemed unacceptable and *will* not be further considered." ECF No. 17-1 at 89 (RFP) (emphasis added). This RFP language suggests, if anything, that the VA lacks discretion to simply ignore the missing certification. RFP Amendment 004, in turn, expressly required that, to comply with 13 C.F.R. § 128.402(e), joint ventures offerors "*must* include in their offer a certification" attesting to compliance with 13 C.F.R. § 128.402(c) and (d). *Id.* at 163 (Amendment 004) (emphasis added). Taken together, the Solicitation's certification requirement pursuant to 13 C.F.R. § 128.402(e) is a material one.

5

Moreover, the text of Amendment 004 itself defeats the idea that the certification requirement was immaterial. The Amendment explained that one of its purposes was to "*inform joint venture offerors* of the requirements of 13 C.F.R. 128.402." ECF No. 17-1 at 163 (Amendment 004) (emphasis added). OS-DB could not in good faith argue that a requirement directly connected to the very purpose of an RFP amendment constituted an "immaterial" requirement — particularly not when OS-DB was the only joint venture left in the competition. The instruction was quite literally a reminder specifically for OS-DB.

Amendment 004 poses yet another, fatal problem for OS-DB's position. Amendment 004, issued on March 9, 2026, was issued *after* the VA conducted discussions, and prior to when the two remaining offerors in the competition had to submit their final proposal revisions. *See* Compl. ¶ 16 ("On November 13, 2025, . . . [t]he VA conducted written discussions."). Given that OS-DB omitted the required certification pursuant to 13 C.F.R. § 128.402(e) from its initial proposal, and that the VA subsequently held discussions, Amendment 004 was indeed **the** *post-discussions* opportunity provided to OS-DB to cure its missing certification problem. OS-DB's claim that the VA was required to engage in discussions (or clarifications) *yet again* frankly borders on frivolous.

*Second*, this Court rejected OS-DB's contention that *its* certification omission, *specifically*, should be treated as a non-material proposal defect given the factual circumstances of this particular case — *i.e.*, irrespective of whether such an omission would generally constitute a failure to comply with a material solicitation instruction. OS-DB relies on *BCPeabody* for the proposition that the omission of the certification from its proposal was an immaterial defect and that the VA's failure to seek clarifications from OS-DB was an abuse of discretion. Compl. ¶ 32; ECF No. 15 at 1. This Court, however, concluded that *BCPeabody* is inapposite to the present claim.

In *BCPeabody*, the United States Army Corps of Engineers ("the Corps") solicited proposals for "construction of a cutoff wall through abandoned culverts[,]" among other construction work. *BCPeabody*, 112 Fed. Cl. at 505. "The solicitation listed two factors the Corps would evaluate in awarding the contract: (1) Technical Acceptability and (2) Price." *Id.* "The Technical Acceptability factor was split into two sub-factors: (a) Demonstrated Experience and (b) Past Performance[.]" *Id.* In turn, "the Demonstrated Experience sub-factor contained two sub-elements," one of which was Cutoff Wall Experience. *Id.* "If an offeror received a rating of unacceptable for either sub-element," its offer "would be rejected as technically unacceptable." *Id.* The solicitation required

offerors to supply information sheets with their proposals demonstrating their experience within each sub-element. *Id.* "One of the projects submitted for the Cutoff Wall Experience had to include work penetrating, excavating, and backfilling through an obstruction that could not be removed by a typical backhoe or excavator during cutoff wall construction." *Id.*

BCPeabody's proposal identified Bauer Foundation Corporation ("Bauer") as its major subcontractor for the Cutoff Wall Experience sub-element. *BCPeabody*, 112 Fed. Cl. at 505. "Although BCPeabody's proposal included two project information sheets demonstrating that Bauer had experience in . . . cutoff wall construction . . . [,] BCPeabody mistakenly included two copies of the same project information sheet[.]" *Id.* As a result, the project sheets "did not supply the necessary experience regarding cutoff wall construction in which a sub-surface obstruction was encountered that could not be removed by a typical backhoe or excavator." *Id.* "Because of the missing project information sheet, BCPeabody received a rating of unacceptable for Cutoff Wall Experience," *id.* at 505-06, and its "offer was considered to be technically unacceptable by the contracting officer [.]" *Id.* at 506. "But for the unacceptable rating that BCPeabody received for Cutoff Wall Experience due to its omission of a second project information sheet demonstrating Bauer's experience with an underground obstruction, it would have had the lowest priced, technically acceptable bid." *Id.* The problem for the government, however, was that the selected contract awardee had *also* relied on Bauer for the cutoff wall construction work, and provided the contracting officer with "information about two projects completed by Bauer" in which sub-surface obstruction was encountered that could not be removed by a typical backhoe or excavator. *Id.* "The contracting officer thus knew that Bauer had the requisite experience to perform the cutoff wall construction" — even if not from BCPeabody's proposal. *Id.*

BCPeabody filed suit in this Court, "argu[ing] that the government abused its discretion by failing to inquire about the collating mistake it made regarding information sheets concerning Bauer's cutoff wall experience." *BCPeabody*, 112 Fed. Cl. at 506. While "BCPeabody concede[d] that a contracting officer has discretion in clarifying such clerical errors [pursuant to FAR 15.306(a)(2),]" it "argue[d] that, given the particular circumstances associated with its proposal, it was unreasonable for the contracting officer to fail to do so." *Id.* at 510. The government countered "that the copying error was not a clerical error, and even if it were, the contracting officer was under no duty to inquire into it." *Id.*

Judge Lettow agreed with BCPeabody that the omission was immaterial, and, furthermore, that the contracting officer had an obligation to seek clarifications from BCPeabody. *BCPeabody*, 112 Fed. Cl. at 513. Judge Lettow reasoned that "[t]he contracting officer knew that BCPeabody intended to rely on Bauer as the subcontractor for the cutoff wall construction, that Bauer had the requisite experience to perform the work, and that BCPeabody mistakenly submitted two identical project information sheets respecting Bauer's experience." *Id*. at 511. That is, "BCPeabody's proposal, taken as a whole, could [have been] properly evaluated despite the error." *Id.* Thus, Judge Lettow concluded that the contracting officer "improperly refused to seek clarification from BCPeabody regarding the copying mistake in BCPeabody's offer that related to Bauer's experience in cutoff wall construction in which a sub-surface obstruction was encountered." *Id.* at 513.

Here, OS-DB contends that its "SDVOSB joint-venture status [was] neither new nor unverified," given that OS-DB had updated its joint venture status with the VA as recently as July 2025. Compl ¶¶ 14-15. Moreover, according to OS-DB, the contracting officer knew or should have known that OS-DB attempted to submit the required certification with its final proposal revisions given that OS-DB's email transmittal noted that it had attached the certification (despite not actually doing so). Accordingly, OS-DB argues that, just like the plaintiff in *BCPeabody*, OS-DB's omission from its final proposal revisions amounts to no more than "a clerical attachment error," but regarding which facts the government already had knowledge. *Id.* ¶ 21. OS-DB thus asserts that the government acted arbitrarily and capriciously in excluding OS-DB from competition and, at a minimum, abused its discretion in failing to seek clarifications from OS-DB. *Id.* ¶¶ 28-33.

As the government correctly observes, however, Def. Resp. at 7-8, *BCPeabody* is readily distinguishable from the instant case. Here, unlike in *BCPeabody*, the VA had no certification regarding OS-DB's joint venture status pursuant to 13 C.F.R. § 128.402(e) *for this contract* in *this* procurement file — something OS-DB's counsel conceded at oral argument. In *BCPeabody*, on the other hand, the procurement file contained documentation concerning Bauer's requisite experience in performing the cutoff wall construction — albeit from another source. *BCPeabody*, 112 Fed. Cl. at 506. In the procurement at issue, the contracting officer was certainly under no obligation to go outside of the procurement file to look for a joint venture certification — even assuming it could exist elsewhere in some VA or other government database (which, as demonstrated below, is *not* possible). OS-DB's proposal, even considering the other

remaining offeror's proposal, could not have been properly evaluated given OS-DB's error.

*Third*, even setting aside the distinction between the present case and *BCPeabody*, OS-DB's certification omission constitutes a material defect in its proposal. That is because while 13 C.F.R. § 128.402(e) *does* concern some general joint venture requirements that may carry over from contract to contract, that provision also contains certification requirements that are performance-related, *contract-specific* certifications. In that regard, 13 C.F.R. § 128.402 provides the answers to the following question: "When may a joint venture submit an offer on a VOSB or SDVOSB contract?" 13 C.F.R. § 128.402. Section 128.402(e), in particular, contains various certification requirements for joint venture offerors, including a certification requirement that concerns an offeror's future performance of the *specific contract to be performed*. 13 C.F.R. § 128.402(e)(2)(i)(B). That provision requires each partner to a joint venture to certify that "[t]he parties will perform the contract in compliance with the joint venture agreement and with the limitations on subcontracting requirements set forth in paragraph (d) of this section." 13 C.F.R. § 128.402(e)(2)(i)(B). And 13 C.F.R. § 128.402(d) in turn provides that "[t]he certified VOSB or SDVOSB partner(s) to the joint venture must perform at least 40% of the work performed by the joint venture[.]" 13 C.F.R. § 128.402(d)(2). Similarly, as counsel for OS-DB acknowledged during oral argument, 13 C.F.R. § 128.402(e)(1)(iii) requires each partner to a joint venture to certify that "[i]t will comply with the applicable limitations on subcontracting during performance of the contract, as set forth in § 125.6 of this chapter." 13 C.F.R. § 128.402(e)(1)(iii).

Accordingly, any prior joint venture certification OS-DB may have provided the VA — as OS-DB is the incumbent provider — is meaningless with respect to the *contract-specific* certifications pursuant to 13 C.F.R. § 128.402(e). With respect to the limitation on subcontracting requirements, the VA need not — indeed, cannot — assume that OS-DB would perform the new contract in accordance with those provisions. During oral argument, counsel for OS-DB admitted as much. OS-DB thus abandoned its **sole** predicate for why its certification omission should be immaterial — *i.e.*, based on OS-DB's *earlier* joint venture certification with respect to a *different* contract with the VA. That 13 C.F.R. § 128.402(e) contains certain certifications that are tied to each new contract is further evidenced by the requirement for joint venture offerors to submit certain certifications "at the time of initial offer (**and** if applicable, final offer)." 13 C.F.R. § 128.402(e)(1) (emphasis added).

9

Finally, there is yet another hurdle OS-DB would need to overcome at the merits stage, should this case proceed.  The government contends that, "even if OS-DB's proposal had not been excluded for omitting the JV certification, its proposal would not justify paying" a significant price premium as compared to the single other remaining offeror's price, "and therefore [OS-DB's offer] would not represent the best value to the Government."  Def. Resp. at 8-9.   In that regard, in order "[t]o satisfy § 1491(b)(1)'s [bid protest] standing requirements, a plaintiff must . . . show that it was prejudiced by a significant error in the procurement process."  *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018) (internal citations omitted).  "A party has been prejudiced when it can show that but for the error, it would have had a substantial chance of securing the contract."  *Id.* (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009)).  The government argues that, given the price differential between OS-DB's offer and the other remaining offeror, OS-DB would not have secured the contract even *absent* the alleged error.  In its complaint, OS-DB does not appear to challenge the assessed price differential, but instead contends only that the pricing issue was an improper *post-hoc* rationale, "first articulated in the pre-award debrief after the exclusion decision [for the certification issue] had already been made." Compl. ¶ 42.

While OS-DB certainly satisfies the prejudice requirement at the *pleading* stage based on the allegations in its complaint, OS-DB would still have to *prove* interested party status and prejudice, at the merits stage, based on the administrative record.  *See Am. Relocation Connections, L.L.C. v. United States*, 789 F. App'x 221, 226–27 (Fed. Cir. 2019) ("For standing, we presume the party bringing a bid protest will succeed on the merits of its claim and ask whether it has alleged an injury (or prejudice) caused by the procuring agency's actions.  But once we find that a party has standing, we must turn to the merits of the party's claim and determine whether it can prove it was prejudiced based on the record evidence." (internal citations omitted)); *see also CSI Aviation, Inc. v. United States*, 181 Fed. Cl. 143, 180 (2026) ("Even if a plaintiff alleges facts that, if true, demonstrate Article III standing and statutory standing — *i.e.*, interested party status and prejudice — a plaintiff may still fail to prove such status or prejudice on the merits. In such a case, the proper course is for the trial court to enter judgment for the defendant(s) on the merits."). It is far from clear to this Court that OS-DB would be able to meet its burden to show prejudice on the merits given the nature of OS-DB's challenge to the VA's best value determination and the sequence of events in the record thus far.  Accordingly, putting aside the central missing certification issue, this Court finds OS-DB has not demonstrated a likelihood of success on the merits of its challenge to the VA's putative best value assessment.

10

Having **DENIED** OS-DB's motion for preliminary injunction, ECF No. 5, this Court **ORDERS** the parties to meet and confer regarding how this case shall proceed. Specifically, the parties shall file a joint status report ("JSR"), **on or before July 17, 2026, at 5:00 PM (EST)**, indicating if OS-DB: (1) will voluntarily dismiss its case; or (2) requests this Court to issue a final judgment, given that this Court, in all candor, does not see what additional facts could possibly alter this ruling at the permanent injunctive relief stage (but with OS-DB preserving its right to appeal); or (3) seeks to proceed with its case (and the MJAR process).  If OS-DB requests the latter, the JSR shall explain how the administrative record and MJAR briefing may persuade this Court to view OS-DB's claims differently, notwithstanding the fact that counsel for OS-DB conceded that any prior certification on file somewhere — assuming one exists — cannot plug OS-DB's certification omission for this new contract pursuant to 13 C.F.R. § 128.402(e)(1)(iii) and other contract-specific certification requirements.  The government may include its separate view(s) in the JSR if OS-DB and the government do not agree on next steps.

       **IT IS SO ORDERED**.

               s/Matthew H. Solomson
               Matthew H. Solomson
               Chief Judge